### CIRESI
#### v.
### CITICORP, et al.
#### No. 90 Civ. 3374 (RO).

United States District Court,
S.D. New York.

Sept. 17, 1991.

Richard Greenfield, Brenda M. Nelson, Michael D. Gottsch, Greenfield & Chimicles, Haverford, Pa., for plaintiff.

Joseph T. McLaughlin, Kenneth Caruso, Lawrence J. Slattery, Shearman & Sterling, New York City, for defendants.

## ENDORSED MEMORANDUM

OWEN, District Judge:

This action brought by a Citicorp shareholder on behalf of a purported class of similarly situated shareholders attributes, in general terms, Citicorp's recent financial

losses to securities fraud on the part of Citicorp, its officers and directors.[1] Defendants deny any wrongdoing and move to dismiss the amended complaint for failure to state a claim under the provisions of the federal securities laws sued upon.[2] For the reasons set forth below, I agree and, accordingly, the motion is granted and the action is dismissed.

As sometimes happens when an industry encounters financial problems, this is not the only case of its kind pending against a major bank, and it also is not the only case of its kind that Citicorp/Citibank is now defending. A number of these complaints have been dismissed for a reason common to them all: the claims in essence try to penalize banking institutions "for failing to show 'greater clairvoyance.'" *Hershfang v. Citicorp*, 767 F.Supp. 1251, 1259 (S.D.N.Y.1991). *See also Shields v. Amoskeag Bank Shares, Inc.*, 766 F.Supp. 32 (D.N.H.1991); *In re First Chicago Corp. Securities Litigation*, 769 F.Supp. 1444 (N.D.Ill.1991). Plaintiff's amended complaint, while on first reading sounds as if it were more, on subsequent readings I conclude it suffers from the same defect.

■ The amended complaint alleges that defendants improperly managed Citicorp and Citibank, primarily by failing to establish adequate reserves for loan losses while at the same time making additional loans of a high-risk nature. This being so, it is next alleged that the representations to shareholders and to the investing public that the loan reserves were adequate and that the company in general was financially stable were false and misleading.[3] Well-pleaded allegations must be accepted as true for purposes of a motion such as this. *Luce v. Edelstein*, 802 F.2d 49 (2d Cir.1986). Unsupported conclusory allegations, however, need not.

■ In any event, the claim that the defendants did not plan their loan reserves properly is essentially a claim that defendants mismanaged the company. Even if well-pled, allegations of mismanagement are not actionable under section 10(b) of the federal securities laws. *Santa Fe Industries, Inc. v. Green*, 430 U.S. 462, 476, 97 S.Ct. 1292, 1302, 51 L.Ed.2d 480 (1977). *See also Decker v. Massey–Ferguson, Ltd.*, 681 F.2d 111, 115 (2d Cir.1982). Addressing attempts to use disclosure obligations to "federalize" wrongs that would otherwise only be actionable under state law, the Second Circuit recently stated that facts requiring a court "to distinguish between conduct that is 'reasonable' and 'unreasonable,' or 'informed' and 'uninformed,' [involve] distinctions that are the hallmark of state fiduciary law," and therefore "allegations of garden-variety mismanagement" are not actionable under section 10(b). *Field v. Trump*, 850 F.2d 938, 948 (2d Cir.1988), *cert. denied*, 489 U.S. 1012, 109 S.Ct. 1122, 103 L.Ed.2d 185 (1989). *See also Naye v. Boyd* [1986 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 92,979, at 94,808, 1986 WL 198 (W.D.Wash. Oct. 20, 1986)

---

1. Citicorp officers named as defendants in this action are: John Reed, Chairman of the Board of Directors of Citicorp and Citibank; Richard Braddock, President and a Director of Citicorp and Citibank; Lawrence Small, Vice Chairman and Chairman of the Executive Committee of Citicorp and Citibank; Michael Callen, Sector Executive and a director of Citicorp and Citibank; Thomas Jones, Citicorp's Executive Vice President for Financial Control, Audit and Taxes. Also named as defendants are nine members of the Audit Committee of Citicorp's Board of Directors. Defendant Jones is only named in Count One of the amended complaint.

   Plaintiff's application for certification of this action as a class action is pending resolution of this motion.

2. The initial complaint in this action was filed in May 1990. Defendants moved to dismiss that complaint, but that motion was withdrawn on consent so that plaintiff could file an amended complaint.

3. For example, plaintiff alleges that "defendants have engaged consciously in a course of conduct of disseminating misleading statements to the public regarding the financial condition of Citicorp and [Citibank], specifically the condition of the loan portfolio and the allowance for possible loan losses ... of Citicorp and the Bank. The effect of such a craftily conceived and carried out process was to create and maintain the image that Citicorp is the nation's preeminent banking institution and that Chairman Reed, unlike many other financial executives, has been able to avoid the massive problems generated by years of imprudent lending." (¶ 24)

(inquiry into "the adequacy of the loan loss would require the court to evaluate [defendant's] business judgment to determine whether [defendant] did indeed engage in imprudent banking practices. This sort of inquiry ... is precisely what the [Supreme Court's] ruling in *Santa Fe* sought to avoid"); *Shields v. Amoskeag Bank Shares, Inc.*, 766 F.Supp. 32, 36–38 (D.N.H. 1991); *In re First Chicago Corp. Securities Litigation*, 769 F.Supp. 1444, 1448 (N.D.Ill.1991).

■ Count One also alleges that certain "facts" set forth in the quarterly and annual reports that are the subject of Count One constituted material misrepresentations in violation of Rule 10b–5. Statements of predictions or opinions such as those cited in the amended complaint are only actionable if the speaker "disseminated the forecasts knowing that they were false or that the method of preparation was so egregious as to render their dissemination reckless." *Estate of Detwiler v. Offenbecher*, 728 F.Supp. 103, 137 (S.D.N.Y. 1989). *Decker v. Massey–Ferguson, Ltd.*, 681 F.2d 111, 117 (2d Cir.1982). Upon a thorough reading of the complaint, there is no basis for such a conclusion with respect to any statements or projections made by these defendants. Plaintiff fails to aver any facts which would give rise to an inference that defendants were aware of where their decisions were leading, *see Stern v. Leucadia*, 844 F.2d 997, 1003–4 (2d Cir.), *cert. denied*, 488 U.S. 852, 109 S.Ct. 137, 102 L.Ed.2d 109 (1988), and it would not be appropriate to allow this complaint to stand so that the plaintiff might conduct a fishing expedition to see if there is a smoking gun.

In this respect I find the case of *DiLeo v. Ernst & Young*, 901 F.2d 624 (7th Cir.), *cert. denied*, ⸺ U.S. ⸺, 111 S.Ct. 347, 112 L.Ed.2d 312 (1990), to be particularly apt. There, shareholders of the failed Continental Illinois Bank brought a § 10b–5 action against the bank's accountants. The plaintiffs alleged that the bank's nonperforming loans had increased regularly in volume over time, as had the reserves established for such loans, and that the bank and its accountants had known and failed to disclose that a substantial portion of the bank's loans were uncollectible. The Court of Appeals, in affirming the district court's dismissal of the complaint, made the following observations, which are appropriate here:

> The story of this complaint is familiar in securities litigation. At one time the firm bathes itself in a favorable light. Later the firm discloses that things are less rosy. The plaintiff contends that the difference must be attributable to fraud. "Must be" is the critical phrase, for the complaint offers no information other than the differences between the two statements of the firm's condition. Because only a fraction of financial deteriorations reflects fraud, plaintiffs may not proffer the different financial statements and rest. Investors must point to some facts suggesting that the difference is attributable to fraud. That ingredient is missing in the DiLeos' complaint. It presents nothing other than the change in the stated condition of the firm to suggest that [Ernst & Young] was so much as negligent in auditing Continental's financial statements. Rule 9(b) required the district court to dismiss the complaint, which discloses none of the circumstances that might separate fraud from the benefit of hindsight. There is no "fraud by hindsight," in Judge Friendly's felicitous phrase, *Denny* [*v. Barber*], 576 F.2d [465] at 470 [2nd Cir. 1978], and hindsight is all the DiLeos' offer.

901 F.2d at 627–28. *See also Hershfang v. Citicorp*, 767 F.Supp. at 1257 ("The complaint as a whole alleges simply that defendants' optimism about Citicorp's prospects turned out wrong. Missing are any facts or identified circumstances that would generate an inference of guilty knowledge.").

The Court's analysis with respect to Count One also governs as to Count Two. Count Two alleges that all of the defendants except for Jones failed to disclose the same material facts and made the same material misrepresentations discussed in the context of Count One, only this time the disclosure vehicle was a registration

statement and prospectus filed in connection with a Dividend Reinvestment and Common Stock Purchase Plan which permitted Citicorp shareholders to acquire additional shares by reinvesting the dividends paid on the stock they already owned. Plaintiff alleges that these misrepresentations and omissions artificially inflated the prices at which the additional shares were purchased and that they violated §§ 11, 12(2) and 15 of the Securities Act of 1933. Concluding as I do that the same factual recitations underlie this cause of action as did Count One, and having already concluded that those facts do not constitute material misrepresentations or omissions of fact, as required under sections 11 and 12(2), this claim also is deficient.

■ In addition, I observe with respect to Count Two that plaintiff lacks standing to assert claims under section 11 and section 12(2) because the amended complaint fails to allege that plaintiff purchased any shares pursuant to the Registration Statement relating to the Dividend Plan. *See Unicorn Field, Inc. v. Cannon Group, Inc.*, 60 F.R.D. 217, 226 (S.D.N.Y.1973) (§ 11 "permits recovery only by purchasers of the shares covered by the defective registration statement or by those who can trace their purchases directly to such shares"); *Akerman v. Oryx Communications, Inc.*, 810 F.2d 336, 344 (2d Cir.1987) (only "the person purchasing such security from" the seller or offeror has standing to sue under § 12(2)). Plaintiff was put on notice of this flaw when defendants moved to dismiss plaintiff's original complaint, *see* supra note 2, yet the amended complaint nonetheless does not cure this fatal defect.

■ Finally, Count Three alleges that all of the defendants except for Jones violated § 14(a) and Rule 14a–9 of the 1934 Act in connection with proxy statements issued for Citicorp's 1989 and 1990 annual shareholders' meetings. Specifically, plaintiff alleges that defendants failed to disclose in those materials that the candidates for the Board of Directors had engaged in the wrongdoings complained of in Count I and that, in soliciting the ratification of KMPG Peat Marwick as Citicorp's auditors, defen-

dants failed to disclose that the accounting firm was guilty of numerous improprieties. To the extent that the factual predicate of this cause of action differs from that of Counts One and Two, I address the sufficiency of the pleadings separately.

With respect to the allegation that defendants had a duty to disclose the "utter failure of the [director] defendants to fulfill their stewardship responsibilities," the law does not impose a duty to disclose uncharged, unadjudicated wrongdoing or mismanagement. *See United States v. Matthews*, 787 F.2d 38 (2d Cir.1986); *GAF Corp. v. Heyman*, 724 F.2d 727 (2d Cir. 1983); *Maldonado v. Flynn*, 597 F.2d 789 (2d Cir.1979); *Management Assistance, Inc. v. Edelman*, 584 F.Supp. 1021 (S.D.N.Y.1984).

The same is true regarding Peat Marwick. Plaintiff claims that the defendants should have disclosed in their proxy materials "that there were numerous failures in the audit process," that the directors "did not consider, in light of these audit failures, alternative auditors," that the relationship between Peat Marwick and Citicorp "had grown incestuous over the years," that Peat Marwick was not an "independent" auditor in fact, and that Peat Marwick "had a long history of questionable 'audits' of corporate entities and other financial institutions, many of which 'audits' preceded collapses of the companies in question." Disclosure of unproven allegations of this nature is not required in proxy information, *see GAF Corp. v. Heyman*, 724 F.2d 727, 739 (2d Cir.1983), and an action under § 14(a) is not the proper avenue for a shareholder to challenge the Board of Directors' selection of an accountant.

For the foregoing reasons, I conclude that the general allegations in plaintiff's amended complaint fail to state a claim, that whatever else mismanagement is not actionable federally, and that plaintiff lacks standing to assert Count Two in any event. Accordingly, the action is dismissed. There having been prior amendment, leave to reamend the complaint is denied. *See Luce v. Edelstein*, 802 F.2d 49, 57 (2d Cir.

1986) ("allegations that relate to ... mismanagement ... cannot survive a Rule 12(b)(6) motion even if made with more particularity").

So ordered.